# MARY FRANCES BROCK v. STATE OF MARYLAND

[No. 1136, September Term, 1982.]

*Decided April 15, 1983.*

The cause was argued before WILNER, ALPERT and BLOOM, JJ.

*Victoria S. Keating, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Carmina Szunyog, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Richard B.*

*Rosenblatt, Assistant Attorney General, J. Donald Braden, State's Attorney for Queen Anne's County,* and *John L. Norton, Assistant State's Attorney for Queen Anne's County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

In the late evening hours of March 30, 1980 (or the early morning hours of March 31) John Surderski was shot to death. Someone fired nine or ten bullets from a .22 caliber rifle into his trailer, two of which struck him in the head. On March 23, 1982, a jury in the Circuit Court for Queen Anne's County,[1] by convicting appellant of second degree murder, concluded that she was the killer. From that verdict and the twenty-five year prison sentence imposed in consequence of it, appellant has brought this appeal complaining that:

"I. The court erred in denying appellant's motion to suppress evidence seized from the Moulton property April 1 and August 13.

[and]

II. The evidence was insufficient to sustain the verdict."

We shall discuss these issues in inverse order. As we find no error, however, we shall affirm.

### Evidentiary Sufficiency

The evidence against appellant consisted essentially of the following:

(1) Appellant and Surderski had at one time been friendly, but about two months before Surderski's death — in January, 1980 — they had an altercation, during which Surderski pushed appellant into the mud and called her a pig. Scorned, and with wounded pride, appellant became angry and, on several occasions thereafter, said that "she was going to get even," that "[s]he was going to have revenge."

(2) Surderski was last seen alive at about 5:30 p.m. on March 30. Between 5:30 and 6:00 that afternoon, appellant borrowed Timothy Feehley's automobile. She returned the

---

1. The case was removed to Queen Anne's County from Dorchester County.

car about midnight. The next day, March 31, with Feehley's permission, a deputy sheriff searched the car and found therein a number of .22 caliber casings. The casings were not in the car prior to appellant's use of it; and, according to Feehley, no one else used the car between the time appellant returned it and the search.

(3) In executing the two search warrants, the sheriff found in and around the home in which appellant resided a number of .22 caliber bullets and cartridges, lead bullet fragments, and plastic boxes used to house .22 caliber bullets. (The house was owned by appellant's father, Charles Moulton.) Evidence presented by two F.B.I. agents revealed that: (a) the bullets recovered from the Surderski trailer, the casings found in Feehley's car, and one casing found at appellant's home had all been fired from a .22 caliber Savage Springfield rifle; (b) "the same identical firearm" had fired the casings recovered from Feehley's car and those found at appellant's home; and (c) the bullets found in the Surderski trailer and a cartridge found at appellant's home had the same general composition, and that "within reasonable scientific certainty," they could be expected to come from the same box of cartridges.

(4) Appellant was familiar with .22 caliber guns and had done some target shooting at her home.

We find this evidence, though circumstantial in nature, clearly sufficient to support the jury's verdict.

### Search Warrants

Appellant complains about two search warrants issued by the district court, each authorizing a search of the house in which appellant lived and the surrounding ground. One of the warrants was issued on April 1, 1980, the other on August 13, 1980.

Appellant's attack on the April 1 warrant is twofold; she argues that (1) it was not supported by an adequate showing of probable cause, and (2) it failed to indicate with requisite specificity the items sought to be seized. The August warrant, she claims, was based in part upon the evidence

discovered in execution of the April warrant, which in her view serves to render it invalid as well.

The April 1 warrant was based upon an application presented the same day to district court Judge William Yates by Deputy Sheriff Steven Williams. This was within a day or two after the killing and appellant's arrest for it.

The relevant part of the application was as follows:[2]

"[1] That you[r] affiant has personal knowledge that the house as described above is occup[i]ed by Charles Henry Moulton and his daughter Mary Frances Brock and that Mary Frances Brock has been living at this residence for the past (5) five years.

[2] That on or about 3-30-80 John Frank Surderski was shot and killed with a small caliber weapon at his residence on Smithville road, Taylors Island, Maryland.

[3] That Mary Frances Brock had been seeing John Frank Surderski and was considered by the public as going together.

[4] Your affiant has received information that approximately (3) three week[s] ago Mary Frances Brock and John Frank Surderski had a[n] arguement [sic] at which time Mary Frances Brock told John Frank Surderski she would get even with him.

[5] Your affiant has received information that Mary Frances Brock has told others that she would get even with John Frank Surderski over the arguement [sic] they had.

[6] Your affiant states that on 3-30-80 Mary Frances Brock borrowed a vehicle from Timothy Feehley of Taylors Island, Md. and when the vehicle was returned to the owner and after a consent search was performed by your affiant several [.]22

---

2. We have added the numbers before each paragraph for convenience of reference.

caliber spent cartridges w[ere] found in the vehicle, Mr. Feehley states that [the] cartridge[s] were not in the vehicle prior to it being borrowed by Mary Frances Brock but were there when returned by Mary Frances Brock.

[7] Your affiant states that on 3-30-80 Mary Frances Brock was arrested and charged with the first degree murder of John Frank Surderski.[3]

[8] Your affiant further states that Mary Frances Brock admitts [sic] going to the above named residence several times on 3-30-80 and that there [are] no weapons or ammunition in said residence.

[9] Your affiant states that he has personally been to said residence and in plain view could see several [.]22 caliber bullets lying on a kitchen counter of said residence.

[10] Your affiant states that also in plain view your affiant could see some type of weapon resting in a wall mounted weapons rack in said residence.

[11] Your affiant avers that base[d] on the information received and the statements made by Mary Frances Brock and your affiant[']s knowledge and experience, he has probable c[au]se to believe, and does believe that evidence directly and indirectly related to the shooting death of John Frank Surderski is being concealed in the residence and on the property as described above."

Appellant attacks the warrant by examining, with nearly microscopic precision, each phrase of each paragraph, arguing that each such provision for one reason or another is either non-inculpatory or unworthy of consideration. She then reassembles the dissected application and concludes

---

3. It would seem clear from the full record now before us that appellant must have been arrested on March 31, rather than on March 30, as alleged in paragraph 7. Surderski's body wasn't discovered until March 31, and that is when Feehley's car was searched. For the purpose of determining the validity of the warrant, however, we must accept the March 30 date.

that, as the sum of many zeros is still zero, the application itself is insufficient. She argues that paragraphs 3, 4, and 5 should not have been considered at all because the information is based on hearsay and there is no indication of the source of it. Paragraph 6 she dismisses because it fails to state the precise times that appellant borrowed and returned the car. Paragraph 7, she claims, indicates only that someone thought he had probable cause to make an arrest, but does nothing to establish probable cause for the search. Paragraph 8 alleges innocuous activity; paragraph 9 should be brushed aside because, like paragraph 6, it fails to allege when the event occurred, and also because it neglects to indicate that the bullets seen by Deputy Williams constituted evidence of a crime; and paragraph 10 is of no value because it fails to describe the weapon seen by Williams.

As the Supreme Court, the Court of Appeals, and this Court have held on a number of occasions, warrant applications are not to be parsed and regarded in such a technical and critical way. They are to be read as a whole, in a commonsense manner. In *United States v. Ventresca,* 380 U.S. 102, 108 (1965), the Supreme Court held:

> "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

A similar thought was expressed by the Court of Appeals in *State v. Kraft,* 269 Md. 583, 593 (1973), *cert. den.* 416 U.S. 994 (1974):

"It must be remembered in reviewing nearly any affidavit that there may occur to those conducting the review matters which they would have preferred to be inserted, questions they would have liked answered, just as the average third base bleacher fan or Monday morning quarterback can advise, often in substantial detail, how a baseball or football game might have been played to better advantage. The fact, however, that such questions arise in the mind of a reviewing court does not in and of itself mean the affidavit is defective, any more than the bleacher fan's adverse comment upon a manager's strategy necessarily means that the fan is right and the manager wrong, because the true test is whether it meets the standards enunciated by the Supreme Court, not whether it is drawn as the reviewing court would have preferred for it to be drawn. So long as human beings are involved, different persons will have different reactions to a given situation and often will have varying solutions to a given problem."

In *Lomax v. State,* 15 Md. App. 502, 509, *cert. den.* 268 Md. 750 (1973), we put it this way:

"Mathematical principles and propositions of pure logic maintain that the whole cannot exceed the sum of its individual parts. Yet in the law, whose life has not been logic but experience, a different result often obtains. Items of information or of evidence when assembled in combination frequently can provide a basis for a judgment or decision which could not be reached by a court confined solely to compartmentalized, disparate consideration of those items."

When we examine the application in the light of these principles, we find a great deal more support for the warrant than appellant would allow.

Dorchester County, where all of these events occurred, is a rural county (1980 population 30,623), a great deal of which consists of uninhabitable wetlands. Taylors Island, where both Surderski and appellant lived, is a small community in that county (1980 population of the entire election district was 293). In such rural and sparsely populated areas, people (including law enforcement personnel) tend to know a good bit more about their neighbors than is the case in denser urban areas. It is not uncommon, moreover, for procedures to be somewhat more informal in such places. The judge who issued the warrant, a former elected State's Attorney for the county, is a resident judge in the county.

The application as a whole indicates that appellant was not a stranger to Deputy Sheriff Williams. From paragraphs 1, 9, and 10, it is clear that he knew of her living arrangements and had been to her house, presumably as a guest; [4] from paragraph 8, it is inferrable that he had spoken to her at or after her arrest. Paragraph 6 indicates that Williams had spoken with Mr. Feehley who, it may be inferred, was a friend of appellant. These things taken together could well and properly lead Judge Yates to conclude that Williams knew appellant and had some personal or reliable knowledge about her friends and relationships. He could therefore infer that the information recited in paragraph 3 — appellant's relationship with Mr. Surderski — was made on personal knowledge and was reliable.

The information set forth in paragraphs 4 and 5 appears, from the manner stated, to be based on hearsay — what one or more other unnamed persons told the affiant. Clearly, under the principles laid down in *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969), a warrant could not be based upon that kind of infor-

---

4. Appellant has made no claim in this appeal that Williams was trespassing when he made the observations noted in paragraphs 9 and 10.

mation, which essentially may be regarded as gossip. *See United States v. Karathanos,* 531 F.2d 26 (2d Cir.), *cert. den.* 428 U.S. 910 (1976); *State v. Rockhold,* 243 N.W.2d 846 (Iowa, 1976).

The trial court, in ruling on appellant's suppression motion, concluded that, because the assertions in those two paragraphs failed to pass muster under the *Aguilar* and *Spinelli* standard, they could be given no weight at all by Judge Yates — that they had to be utterly disregarded. For purposes of this appeal, we shall accept that conclusion, although we do not regard it as compelled by *Briscoe v. State,* 40 Md. App. 120, *cert. den.* 283 Md. 730 (1978), which the court cited as authority.

Paragraph 6, inferrably based upon Feehley's remarks to Williams, is particularly incriminating. On the day that Surderski was killed with a small caliber weapon, appellant borrowed a car from Feehley, who also lived in (or on) Taylors Island. After she returned the car, Feehley found several .22 caliber "spent cartridges" that were not there before she borrowed the vehicle. From this, and from paragraph 7, several incriminating inferences may fairly be drawn for the purpose of establishing probable cause: (1) that on the day (or evening) of the murder, appellant was in the tiny community of Taylors Island; (2) that the car was returned on the same day it was borrowed — *i.e.,* before her arrest on March 30; and (3) that, while appellant had the car in her possession, she discharged a number of .22 caliber bullets, which accounted for the presence of the spent cartridges.

Appellant's argument to the contrary notwithstanding, paragraph 7, alleging appellant's arrest, does have a significance. The judge could properly assume from it that the arrest was based not on mere suspicion but upon probable cause to believe that appellant had in fact committed the murder. That, of course, would provide additional support for the inferences deducible from paragraph 6.

Paragraph 8, when read in conjunction with paragraphs 6, 7, and 10 raises an inference that the weapon used to kill

Surderski likely could be found in appellant's home. As noted, from paragraph 6 the judge could reasonably conclude that appellant had used a gun or rifle to discharge .22 caliber bullets while in the vicinity of Taylors Island. The weapon was not found in Feehley's car after she returned it. She admitted that she had been back to her home several times on March 30. Although she denied to Williams that there were any weapons or ammunition at her home, Williams had on one or more past occasions seen a weapon and some .22 caliber bullets there. The conclusions that (1) appellant returned the weapon to her home and (2) given the fact that less than two days had elapsed since she would have done so, the weapon would likely still be there, if not inescapable, are certainly reasonable. *See State v. Edwards,* 266 Md. 515 (1972).

For these reasons, we think that, when read in a commonsense manner, the affidavit establishes adequate probable cause for the warrant.

We turn now to the second prong of appellant's attack on the April 1 warrant—that it lacked specificity in terms of the items to be seized. Again, we find no merit to her complaint.

The warrant, of course, was based upon the application of Deputy Sheriff Williams. In the warrant, the court stated, *inter alia:*

"[T]here is probable cause to believe that evidence directly and indirectly related to the on going investigation concerning the shooting death of John Frank Surderski is being concealed in the residence and property of: Charles Henry Moulton [which was stated as being in Taylors Island and was then described in detail].

\* \* \*

And I am satisfied that there is probable cause to believe that there is evidence directly and or indirectly related to this investigation is being concealed on the premises and property above described *and that the foregoing ground for application for issuance of the Search Warrant exist*

*and is attached hereto and made a part hereof."* (Emphasis supplied.)

Upon these findings, the court, through the warrant, authorized Williams to enter and search appellant's home, including containers and compartments therein, and to "[s]eize all evidence used in this crime and or any evidence directly or indirectly related to his investigation, found in or upon said premises and or property."

The search was made the next day — April 2. Recovered from the home and the ground upon which it sat were a number of .22 caliber bullets and spent casings as well as two empty boxes formerly used to house .22 caliber bullets. Some of the bullets were found on the kitchen counter, where Williams, in his affidavit, had said he had seen them.

The actual authorization in the warrant, quoted above, is, of course, stated in general terms. Standing alone, it might well be regarded as far too general to pass Constitutional muster. The Fourth Amendment prohibits general warrants. It requires that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." As summarized in *Andresen v. Maryland,* 427 U.S. 463, 480 (1976),

> " '[T]he problem [posed by the general warrant] is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a 'particular description' of the things to be seized.' *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971). This requirement ' "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' *Stanford v. Texas,* 379 U.S. 476, 485 (1965), quoting *Marron v. United States,* 275 U.S., at 196."

Search warrants can be challenged for generality in two basic respects — failure to specify the place or places to be searched and failure to describe with particularity the items authorized to be seized. *See,* in general, 2 LaFave, *Search and Seizure,* §§ 4.5, 4.6 (1978). We deal here with the second of these; the warrant clearly limits the area of the search, and no complaint is made about that.

Attacks on lack of specificity as to what may be seized generally take two forms — failure to indicate the crime to which the items may be relevant and failure to describe the items themselves with particularity. In either case, the standard is essentially the same: does the warrant give proper notice to the party whose property is to be searched and does it sufficiently constrain the discretion of the officer executing it by making clear what he may look for and take? *See, for example, United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970), *cert. den.* 404 U.S. 947 (1971); *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976); *Application of Lafayette Academy, Inc.,* 610 F.2d 1, 4 (1st Cir. 1979).

In applying this standard, we look first to the warrant itself, which must be read in the light of *Andresen v. Maryland,* 427 U.S. 463 (1976). In *Andresen,* an attack was made upon a warrant that authorized the seizure of a variety of specific items and documents pertaining to a particular crime, together with "other fruits, instrumentalities and evidence of crime at this [time] unknown." (P. 481.) Andresen argued that the catchall language represented a separate, and overbroad, authority, not tied to any particular crime. The Court rejected that approach, however, concluding that, as the general provision followed the specific enumeration as part of the same sentence, it must be read in that context and thus be regarded as referring only to the crime mentioned in connection with the specific items. The point of *Andresen* is that the warrant must be read as a whole. *See United States v. Johnson,* 690 F.2d 60 (3d Cir. 1982).

A similar reading is appropriate here. The authority to seize all evidence "used in *this crime"* and evidence "related

to *this investigation*" (emphasis supplied) necessarily must refer back to the first two paragraphs of the warrant, wherein the court recites its finding of probable cause to believe that evidence "related to the on going investigation concerning the shooting death of John Frank Surderski" is being concealed in and around appellant's home. That homicide is the only crime mentioned in the warrant, and it is the only crime to which the search and seizure authority could reasonably relate.

With regard to the particular items subject to seizure, the warrant itself is silent. It does, however, as we have noted, expressly refer to the application submitted by Deputy Sheriff Williams, which application "is attached hereto and made a part thereof." The application, of course, is somewhat more specific. It indicates that what Williams was looking for, and expected to find in or around appellant's home, was a weapon that may have been used in the Surderski killing and .22 caliber bullets and casings that might match those found at Surderski's trailer or in Feehley's car.

Whether a lack of specificity in the warrant itself, as to the items subject to seizure, can be overcome by resorting to an attached and incorporated application or affidavit appears to be an open question in Maryland. On at least three occasions, this Court has concluded that in determining whether a warrant adequately describes the *place to be searched,* "it is permissible to look to the affidavit as well as the warrant since the affidavit is part of the warrant and incorporated by reference therein." *Frey v. State,* 3 Md. App. 38, 47, *cert. den.* 250 Md. 731 (1968); *Harris and Schmitt v. State,* 17 Md. App. 484, 488 (1973); *Hignut v. State,* 17 Md. App. 399, 417-18 (1973).

The traditional or general rule, derived principally, it would seem, from the statement in *Marron v. United States,* 275 U.S. 192, 196 (1927), that nothing must be left to the discretion of the officer executing the warrant, is that "the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is

neither part of the warrant nor available for defining the scope of the warrant." *United States v. Johnson, supra,* 541 F.2d 1311, 1315. *See also United States v. Marti, supra,* 421 F.2d 1263; *United States v. Johnson, supra,* 690 F.2d 60; *Application of Lafayette Academy, Inc., supra,* 610 F.2d 1.

Most of the more recent decisions have recognized an exception to that rule, however, where (1) the warrant expressly refers to and incorporates the affidavit, and (2) the affidavit accompanies the warrant. In such case, the bases of the rule, as described in *Johnson, supra,* have been satisfied — the affidavit becomes part of the warrant and is available to define its scope. *See United States v. Johnson, supra,* 541 F.2d 1311; *United States v. Johnson, supra,* 690 F.2d 60; *United States v. Womack,* 509 F.2d 368 (D.C. Cir. 1972), *cert. den.* 422 U.S. 1022 (1975); *United States v. Klein,* 565 F.2d 183, 186 (footnote 3) (1st Cir. 1977); *United States v. Lightfoot,* 506 F.2d 238 (D.C. Cir. 1974); *United States v. Freeman,* 532 F.2d 1098 (7th Cir. 1976); *United States v. Hillyard,* 677 F.2d 1336 (9th Cir. 1982); *State v. Corbin,* 419 A.2d 362 (Me. 1980); *State v. Shanklin,* 193 S.E.2d 341 (N.C. App. 1972), *cert. den.* 194 S.E.2d 154 (N.C. 1973); *State v. Olson,* 648 P.2d 476 (Wash.App. 1982). That, of course, was the theory underlying our decisions in *Frey, Harris and Schmitt,* and *Hignut, supra. Compare Application of Lafayette Academy, Inc., supra,* 610 F.2d 1; *Bloom v. State,* 283 So. 2d 134 (Fla.App. 1973); and *State v. Dragos,* 509 P.2d 1051 (Ariz.App. 1973), where the exception was noted but not applied because there was no incorporation or accompaniment.

*See also United States v. Thompson,* 495 F.2d 165, 170 (D.C. Cir. 1974); *Nunes v. Superior Court,* 100 C.A.3d 915 (1980); *People v. Papez,* 652 P.2d 619 (Colo.App. 1982); *United States v. Wuagneux,* 683 F.2d 1343, 1351 (footnote 6) (11th Cir. 1982); and *State v. Woratzeck,* 637 P.2d 301 (Ariz.App. 1981), suggesting that the exception may apply even if the affidavit is not physically attached to the warrant so long as the officer executing the warrant and the person whose property is searched are otherwise made aware of the

scope of the authority granted by the warrant; but *compare Commonwealth v. Taylor,* 418 N.E.2d 1226 (Mass. 1981).

The record before us does not expressly state whether the affidavit was physically attached to the warrant at the time of the search. As appellant has made no complaint with respect to that matter, however, either in the trial court or before us, we shall not delve further into it. Maryland Rules 1085, 1031.[5] We do note, in addition to the statement in the warrant that the application was attached to it, that Deputy Sheriff Williams, the affiant, was the officer who executed the warrant and that, according to his return, a copy of the warrant and an inventory of the items seized were left in the home "with the owner[']s knowledge."

In this circumstance, and upon the authority cited, we conclude that the affidavit could be considered as part of the warrant, and, when so considered, the warrant did not contravene the specificity requirement of the Fourth Amendment. In practical effect, Williams was authorized to seize weapons, ammunition, and related items pertinent to the Surderski killing, and that was all that he in fact seized.

Appellant's attack on the August 13 warrant is based almost entirely upon the premise that the evidence discovered in the April 2 search had to be disregarded. As we have concluded that such evidence was lawfully taken, however, that premise has no validity. We believe that the August warrant was lawfully issued and that the court did not err in declining to suppress the evidence taken pursuant to it.

> *Judgment affirmed; appellant to pay the costs.*

---

5. Appellant's complaint as to lack of specificity is stated thusly in her brief:

> "[W]hat is offensive in the warrant is that it did not — because it could not — describe with particularity the things to be seized, because the *application,* as a fundamental matter, did not contain sufficient information to show that any particular items of evidence relating to the Surderski homicide could be found on the Moulton property." (Emphasis supplied.)